MARIENTHAL, LEHMAN & Co. *v.* SHAFER *et al.*

In replevin, the plaintiff must recover upon the strength of his own right to the present possession of the property.    Whatever the right or title under which the defendant may hold the property, if the plaintiff is not entitled to the present possession, he must fail in his action.

No action can be maintained on a contract, the consideration of which is either wicked in itself, or prohibited by law.

A party who has sold intoxicating liquors in this State, with intent to enable another to violate the act for the suppression of intemperance, approved January 22, 1855, cannot sustain an action of replevin against a sheriff, and attaching creditors of the person to whom the liquors were sold, for the recovery of the possession of such liquors, on the ground that the sale was void, and the right to the possession of the liquors still remained in the vendor.

The courts will not assist a party to regain that which he has parted with, for an illegal purpose ; and the same principle prevails where it is attempted to recover that which was intended to be sold in violation of law.

Where in an action of replevin, to recover the possession of intoxicating liquors, against a sheriff and the attaching creditors of N., which liquors were sold by the plaintiff to N., with intent to enable him to violate the act for the suppression of intemperance, the court instructed the jury as follows:  " That if the jury find that the contract for the sale of the liquors was made in the State of Iowa, to be sold in violation of the law, no right of property ever passed out of plaintiff to N. by reason of such sale; but it remained in plaintiff, and was not subject to the attaching creditors of N.;" and " that if they believed that defendants held through N., as attaching creditors of his, they must find for plaintiff, if they also found that the attachment was made

while the liquor law was in force:" *Held*, That the instructions were erroneous.

*Appeal from the Lee District Court.*

FRIDAY, JUNE 18.

The plaintiff sold to one Nutts, a quantity of intoxicating liquors. After the sale and delivery, they were attached, as the property of said Nutts, at the suit of several of his creditors. Plaintiffs then replevied said liquors, making Nutts, the attaching creditors, and the sheriff, parties defendants. On the trial, certain instructions were asked by the plaintiffs and given; others asked by defendants, and refused; and others again given by the court; to the giving and refusing to give all which, the defendants excepted. Verdict and judgment for plaintiffs, and defendants appeal. The instructions will be found in the opinion of the court.

*Hornish, Lomax & J. W. Rankin*, for the appellants,

*C. E. Moss* and *Wm. Edwards*, for the appellees.

WRIGHT, C. J.—Several instructions were asked by plaintiffs and given, embodying substantially the same principle as that contained in the following, which was given by the court in the instructions in chief: "If the jury find that the contract for the sale of the liquors, was made in the State of Iowa, to be sold in violation of the law, no right of property ever passed out of plaintiffs to Nutts, by reason of such sale; but it remained in plaintiffs, and was not subject to the attaching creditors, or Nutts." The jury were also instructed, "that if they believed that defendants held through George Nutts, as attaching creditors of his, they must find for plaintiffs, if they also found that the attachment was made while the liquor law was in force." Without referring to the numer-

Marienthal, Lehman & Co. v. Shafer et al.

ous other instructions upon this subject, we will state briefly our reasons for holding those above recited to be erroneous.

This is an action of replevin. Plaintiffs must recover upon the strength of their own right to the present possession of the property. Whatever the right or title under which defendants may hold, if plaintiffs are not entitled to the present possession, they must fail in their action.

Again: by the 15th section of the "act for the suppression of intemperance," approved January 22, 1855, [Laws of 1854–5, page 68], it is provided, that, "all sales, transfers, conveyances, mortgages, liens, attachments, pledges and securities of every kind, which either in whole or in part, shall have been made for, or on account of intoxicating liquors, sold in violation of this act, shall be utterly null and void against all persons in all cases; and no rights of any kind shall be acquired thereby, and no action of any kind shall be maintained in any court in this State, for intoxicating liquors, or the value thereof, sold in any other State or country, contrary to the law of said State or country, or with intent to enable any person to violate any provision of this act; nor shall any action be maintained for the recovery or possession of any intoxicating liquors, or the value thereof, except in cases where persons owning or possessing such liquors, with lawful intent, may have been illegally deprived of the same." The liquors were sold to Nutt, the attachments levied, and the property replevied, while this law was in force.

What right then had plaintiffs to the liquors? They insist that they have such right, because their sale was made to enable Nutts to violate the provisions of the law; that it was therefore void, and the right to the possession still remained in them. In the language of Baldwin, J. in *Bartle* v. *Coleman*, 4 Peters, 184, "to state such a case, is to decide it." The argument assumes that the contract for the sale of the liquors, was illegal, and no principle is better settled, than that no action can be maintained on a contract, the consideration of which is either wicked in

itself, or prohibited by law. *Armstrong* v. *Toler*, 11 Wheat. 258; *Hanney* v. *Eve*, 3 Cranch, 242; *Craig et al* v. *The State of Missouri*, 4 Pet., 410; *Executors of Cambriosa* v. *Assignees of Moffit*, 2 Wash., C. C. 98.

But the argument is, that appellees do not seek to enforce a contract, but to recover their property, upon the ground that Nutts obtained it from them upon an illegal contract. To this contract or agreement, however, they were parties. They voluntarily undertook to assist Nutts to violate the law, and for this purpose, sold and delivered to him the property in controversy, to be used for an illegal purpose. The contract thus made, in the language of the law, "was utterly null and void against all persons, in all cases, and no rights of any kind could be acquired thereby, nor any action waived for the recovery or possession of such liquors."

In such cases, the rule is, (in the strong language of the supreme court of the United States, in the case of *Bartle* v. *Coleman*, before cited), that "the law leaves the parties as it found them. If either has sustained a loss by the bad faith of a *particeps criminis*, it is but a just infliction for premeditated and deeply practiced fraud; which, when detected, deprives him of anticipated profits, or subjects him to unexpected losses. He must not expect that a judicial tribunal will degrade itself, by an exertion of its powers, by shifting the loss from the one to the other; or to equalize the benefits or burthens which may have resulted by the violation of every principle of morals and of law." *Dixon* v. *Olmestead*, 9 Vermt, 310; *Foote* v. *Emerson*, 10 Ib., 338; *Hall* v. *Mullen*, 5 Hart, J., 193; *Wheeler* v. *Russell*, 17 Mass. 258; *Roby* v. *West.*, 4 N. H. 285; *Duncanson* v. *McLure*, 4 Dall, 308; *Maybin* v. *Canton*, Ib. 298.

It will be observed that plaintiffs seek to maintain their action, because of the invalidity of the contract of sale to Nutts. The direct and immediate consideration of this contract was illegal, as is clearly assumed in the instructions and in the argument. They sold these

liquors to Nutts, with the intention, that he, by their sale, should violate a positive statute of the State. For if the consideration was not an illegal one, then, so far as this part of the case is concerned, there would be no pretence that the action could be maintained. Viewing the transaction as an illegal one, therefore, upon what principle is it that they can, by asserting their own turpitude—their own violation of law—seek to recover back their property? Suppose they had paid Nutts a sum of money, if he would take their liquors from time to time, and dispose of them, in violation of the laws of the State, could they recover it back? We think most clearly not. If they had undertaken to pay for such illegal services, Nutts could not recover; but having paid, our courts will not assist them to regain that which they have parted with for an illegal purpose. And the same principle obtains, where, as in the case at bar, it is attempted to recover that which was intended to be sold in violation of the law.

It is entirely immaterial, whether the sheriff could, or could not, sell these liquors, to satisfy the debts of Nutts. If it was so far legitimate property, as to be legally the subject of levy and sale, then plaintiffs would have no more right to it, than to a horse, a wagon, or any other article of personal property, which they might have sold to the attachment debtor. If it was not property in legal contemplation, and could not be sold by the sheriff, neither would it be in the hands of the plaintiffs, nor should the law be invoked to give it into their control. If property, and a legitimate subject of bargain and sale, then it was rightfully in the hands of the officer; if not, then plaintiffs have no right to complain, for "when the parties are equally in the wrong, the condition of the possessor, is the better."

It is said that it was the duty of the court to leave the property were it found it, and that it could not rightfully make an order in the premises. Grant this, and certainly the plaintiffs would not be benefitted. For, if they

had no right to bring replev'n, then the property, being in the possession of the sheriff, should be left there. It will certainly not be claimed by the argument, that it is true, they have no right to their action, but then they have now, by virtue of their writ, the possession, and the law should leave it there, and the court should make no order in relation to it. Such a position, if sustained, would enable men with impunity to violate the law. Thus, if they found that the person to whom they had sold liquors, was likely to be unable to pay—or that the investment would probably be an unprofitable one—they could at once bring replevin, and say to the court, it is true we sold these liquors in violation of law, and with the design that they should be used for that purpose, but they are not the subject of judicial cognizance, and should be left in our hands, where they are found. Such an argument does not reach far enough back. The law found the liquors in the hands of the officer, and it is there they are to be left, and not in the hands of the party who has, without right, replevied them.

As already stated, it makes no difference whether the sheriff can sell the liquors or not. At present, we have nothing to do with that question. Whether he would be liable, if he should sell them under execution—whether it would be his duty to confiscate them; whether the purchaser could take them, without violating the law, are questions that in no manner change the result of this case. Whatever answers might be given to these inquiries, we are still met with the insurmountable difficulty, that whatever rights others may have—whatever may be their present or future liability—the plaintiffs, at least, stand in no position to maintain this action. They, at least, are not entitled to the present possession of the liquors.

We conclude, therefore, that there was error in the instructions as given by the district court. And thus concluding, it is unnecessary to examine the other errors assigned. It seems that plaintiffs also claimed that the property never passed from their possession, or if it did,

it was obtained by Nutts through fraud. As to this part of the case, we at present intimate no opinion.

Judgment reversed.