Martin v. Hodge.

---

MARTIN V. HODGE,

1.  CONTRACTS: *Prohibited by statute, void.*

    Every contract made for or about anything which is prohibited and made unlawful by statute is void, though the statute does not declare it so, but only inflicts a penalty on the offender; because a penalty implies a prohibition, though there are no prohibitory words in the statute.

2.  ACTION: *None on an illegal or immoral act.*

    No court will aid a man whose cause of action is founded upon an illegal or immoral act. Whenever the action appears to arise *ex turpi causa*, or from the transgression of the law, the courts refuse their assistance—not for the sake of the defendant, but because they will not aid such a plaintiff.

3. SAME: *Test as to illegality, etc.*

The test to determine whether an action arises *ex turpi causa* is the plaintiff's ability to establish his case without any aid from an illegal transaction. If his claim or right to recover depends on a transaction which is *malum in se*, or prohibited by law, and which he must prove in order to make out his case, he cannot recover.

4. REPLEVIN: *Possession evidence of title, etc.*

Proof of the plaintiff's possession of the property, and of a wrongful taking from him, without more, is sufficient to maintain replevin for the property, though it appears that he intends an unlawful disposition of it when recovered.

5. SAME: *Dismissal before trial no bar to new suit.*

The dismissal of an action of replevin and return of the property to the defendant before trial, will not bar a new action for the same property.

APPEAL from *Carroll* Circuit Court.

Hon. I. M. PITTMAN, Circuit Judge.

*J. M. Hill* for Appellant.

No title can be divested from one and vested in another by a lottery, and no testimony concerning such lottery is admissible. "*Ex turpi contractu non oritur actio.*" *Mansf. Dig., secs. 1914, 1915, 3403, 3404; 1 Taunt., 136; 17 Mass., 258; 14 Me., 404; 10 Beng., 107; 17 Vt., 105; 5 Hill. (N. Y.), 27; 22 Me., 488; 5 Penn., 452; 2 Miss., 18; 4 Humph. (Tenn.), 199.*

The parties are in the same attitude as if there had been no lottery. *22 Pick., 181.* Martin seeks to disaffirm the illegal transaction, and such actions can be maintained. *Carthew, (K. B.), 252; 10 Beng., 107; 1 M. & S., 596; 3 Wend., 296; 2 Cox, 183; 20 Johns., 290; 3 Ark., Jeffrey v. Ficklin; Rose Dig., 408.*

Plaintiff, after dismissing his suit, had a right to bring another within a year. *Sec. 5102, Mansf. Dig.* He was compelled to return the horses to save his replevin bond, and appellee acquired no right thereby.

*O. W. Watkins* for Appellee.

Martin, not being the owner, having no special interest in the property, and not being entitled to the possession of the horses at the time this suit was brought, cannot maintain this action. *Mansf. Dig., secs. 5571–2; Wells on Replevin, sec. 94.* The title was in issue, and plaintiff must show a good title. *Wells on Replevin, sec. 120.* It was not an error of the court to refuse to instruct the jury that it was not prejudicial to appellant to have dismissed his suit. That instruction was abstract in this case. Appellant brought his second suit and no objection was made. The statute simply means that it shall not bar any future action, and in this case that was not in question. The instructions given by the court covered all the legal points in the case upon which there was any testimony.

All the instructions asked by appellant and refused by the court are abstract. Appellant not only engaged in an open violation of the law by reason of which he put appellee in possession, but has received the full price of his property. The true doctrine (and in support of the law as declared by the court) will be found in the following cases and authorities: "Vainly does he who offends against the law seek the aid of the law." *Broom Max., 3 Lond. ed., 255.*

In *Norris v. Norris, Adm'r, 9 Dana, 317,* the court says: "When the parties to an illegal or fraudulent contract are *in pari delicto,* neither a court of equity nor a court of law will aid either of them in enforcing the execution of that which may be executory or rescinding that which may be executed. In such a case the law will not be the instrument of its own subversion, and to every invocation of its assistance replies, *in pari delicto potior est conditio defendentis.*"

Chancellor Walworth, in *Nellis v. Clark, 4 Hill, N. Y., 424,* said: "It is a general rule that no court will aid a party to an illegal contract which is executory; and to recover thereon.

Martin v. Hodge.

And where the contract is executed a court will not aid a *particeps criminis* in setting it aside. Where both parties are equally offenders against the positive laws of the country, or the general principles of public policy, or the laws of decency or morality, *potior est conditio defendentis;* not because the defendant is more favored when both are equally criminal, but because the plaintiff is not permitted to approach the altar of justice with unclean hands."

The exceptions to this rule are some few cases where the law which creates the illegality in the transaction was intended to restrain the one party and protect the other, as in case of public officers in receiving illegal fees; by extortion contracts, by lenders of money in which usurious interest has been paid. To the same effect are the following cases: *Payne v. Bruton, 10 Ark., 53; Martin v. Royster et al., 8 Ark., 82; Kinney v. McDermot, 55 Iowa, 674; Marienthal v. Shaffer, 6 Iowa, 226; Pike v. King, 16 Iowa, 49; Smith v. Bean, 15 N. H., 577; Jackson v. Walker, 5 Hill, N. Y., 27; Holman v. Johnson, Cow., 341.*

BATTLE J. This is an action of replevin to recover the possession of two horses. There is no controvery about the facts in the case. As proven on the trial, they are, substantially as follows:

On the 25th day of December, 1884, the appellant, George W. Martin, was the owner of two horses. He determined to dispose of them by lottery, and for that purpose sold two hundred and fifty tickets at one dollar each, James Hodge, the appellee, being one of the purchasers. Afterwards, on the night of the 25th of December, 1884, the lottery took place in Eureka Springs, in this state. Three men were selected to manage and conduct the drawing. Two hundred and forty-nine white, and one black, marbles were placed in a revolving keg. A boy was blind-folded; the judges turned the keg, and the boy drew a marble from the keg. Each marble was numbered in

the order drawn. The owner or holder of the ticket bearing the number of the black marble was to be the owner of the horses. As each marble was drawn the judges would turn the keg, and then the boy would draw another marble. The judges continued to turn the keg and the boy to draw one marble at a time until the seventieth drawing when the black marble was drawn, and some one exclaimed, "lucky Jim Hodge." Hodge, then, quickly went out of the house where the drawing took place, and without exhibiting his tickets, took possession of the horses, which Martin had hitched near by, and he and one Bollinger rapidly rode them away and put them in Hodge's stable, no one expressly objecting to their doing so. It was soon discovered that Hodge was not the owner nor holder of ticket No. 70, but that one Turk Moore was. Hodge admitted he was not, and does not now claim that he ever was, or is. Soon after this discovery, and on the night of the drawing, Martin demanded of Hodge the possession of the horses and he refused to give them up. On the same night Martin commenced an action of replevin against Hodge, before a justice of the peace, for the possession of the horses, and about midnight the constable, who executed the order of delivery, took possession of them. "But the next day he went to the office of Hodge's attorney, in whose office was also the office of the justice of the peace, before whom the cause was pending, and said he did not want to have anything more to do with the affair, and dismissed the suit and told the constable, then present, that he would let Hodge and Moore fight it out, and to return the horses to Hodge," which the constable did. Afterwards, on the same day, upon reconsideration, he changed his mind, and brought this action for the same horses.

Among the instructions given, the court instructed the jury as follows:

"If plaintiff had parted with possession of the property in controversy to defendant, at or before the beginning of this

Martin v. Hodge.

suit, and intended so to part with it, either by delivering to Hodge or authorizing the delivery thereof, you will find for defendant. As to whether plaintiff parted with his property or the possession thereof, you are to determine from all the testimony."

"If you find from the evidence that the plaintiff has lost all right of title and possession to the horses in controversy, and is only attempting to recover the possession of the same *for the purpose of furthering a violation of law*, such as lottery is, then he can not recover and your verdict must be for defendant."

And refused to instruct the jury, at the request of plaintiff, as follows:

"That the dismissal of the former suit did not prejudice plaintiff's right to a subsequent suit for the same subject matter; and that the dismissal of the former suit did not confer any right upon defendant."

"That a lottery consists in the distribution of prizes by chance; and neither the title nor right of possession to property can be acquired thereby."

A verdict was returned and a judgment was rendered in favor of defendant. Plaintiff moved for a new trial, which was denied, and he filed a bill of exceptions and appealed.

It is a well settled doctrine that "every contract made for or about any matter or thing which is prohibited and made unlawful by statute is a void contract, though the statute does not mention that it shall be so, but only inflicts a penalty on the offender; because a penalty implies a prohibition, though there are no prohibitory words in the statute." *Bartlett v. Vinor, Carthew, 252; Tucker v. West, 29 Ark., 386.*

1. Contracts prohibited by statute void.

It is equally well settled that "no court will lend its aid to a man who founds his cause of action upon an illegal or immoral act. If from the plaintiff's own showing, or otherwise,

2. No action on illegal or immoral contracts.

the cause of action appears to arise *ex turpi causa*, or from the transgression of the positive laws of the country, then the courts say he has no right to be assisted. It is upon that ground that the court goes; not for the sake of the defendant, but because they will not lend aid to such a plaintiff." *Holman v. Johnson, 1 Cowper, 341 ; Nellis v. Clark, 4 Hill (N. Y.), 424; Marienthal v. Shafer, 6. Iowa, 226 ; Smith v. Bean, 15 N. H., 577.*

3. Test of il-legality.

The test to determine whether a plaintiff is entitled to recover in an action like this or not, is his ability to establish his case without any aid from an illegal transaction. If his claim or right to recover depends on a transaction which is *malum in se* or prohibited by legislative enactment, and that transaction must necessarily be proved to make out his case, there can be no recovery. *Eberman v. Reitzel, 1 Watts and S., 181 ; Phalen v. Clark, 19 Conn., 421 ; Armstrong v. Toler, 11 Wheaton, 258.*

The case of *Catts v. Phalen, 2 How., 376*, is illustrative of this rule. In that case, the defendant, Catts, was employed by the plaintiffs, Phalen and Morris, to draw out of a lottery wheel the tickets of numbers therein to be deposited by plaintiffs, without selection and by chance, it being understood that the tickets of numbers, when drawn out in a certain order, were to determine the prizes to such lottery tickets as the plaintiffs had disposed of, or still held in their own hands, according as the tickets of numbers so drawn out corresponded with the numbers on the face of such lottery tickets respectively. Catts, after his employment, employed one Hill to purchase a ticket in this lottery for him, but apparently for Hill himself. Hill purchased the ticket in the manner he was employed, and delivered it to Catts. Catts, being in possession of the ticket purchased for him, on the day of the drawing, pretended to draw out of the wheel the tickets of numbers therein deposited by plaintiffs, while at the same time he had fraudulently concealed in the cuff of his coat false and

fictitious tickets of numbers fraudulently prepared by him, which exactly corresponded in numbers with the numbers on the face of the ticket held by him. In drawing out the tickets of numbers, he contrived to slip between his finger and thumb the false and fictitious tickets of numbers concealed in his cuff, and produced and exhibited the same to plaintiffs' agent as and for genuine tickets properly drawn from the wheel, and by reason thereof the ticket purchased for him, Catts, was registered as the ticket entitled to a prize of $15,000. He, then, hired Hill to claim the ticket and collect for him the $15,000, less fifteen per cent. to be deducted by plaintiffs, which Hill did. Phalen and Morris, discovering the fraud after the prize had been paid, brought suit to recover it. The court, assuming that the lottery was illegal, said : " The facts of the case present a scene of a deeply concocted, deliberate, gross and most wicked fraud, which the defendant neither attempted to disprove or mitigate at the trial, the consequence of which is that he has not, and cannot have any better standing in court than if he had never owned a ticket in the lottery, or it had never been drawn. So far as he is concerned, the law annuls the pretended drawing of the prize he claimed ; and, in point of law, he did not draw the lottery ; his fraud avoids not only his acts, but places him in the same position as if there had been no drawing in fact, and he had claimed and received the money of the plaintiffs by means of any other false pretense, and he is estopped from avowing that the lottery was in fact drawn.

"Such being the legal position of Catts, the case before us is simply this : Phalen and Morris had in their possesion $12,500, either in their own right, or as trustees for others interested in the lottery. No matter which, the legal right to this sum was in them ; the defendant claimed and received it by false and fraudulent pretenses, as morally criminal as by larceny, forgery or perjury, and the only question before us is, whether he can retain it by any principle or rule of law.

24——47

Martin v. Hodge.

"The transaction between the parties did not originate in the drawing of an illegal lottery; the money was not paid on a ticket which was entitled to, or drew the prize; it was paid and received on the false assertion of that fact. The contract which the law raises between them is not founded on the drawing of the lottery, but on the obligation to refund the money which has been received by falsehood and fraud, by the assertion of a drawing which never took place."

According to these principles of law and this test of their application, is plaintiff, in this action entitled to recover?

By the statutes of this state it is enacted: "Any person who shall vend or otherwise dispose of any lottery tickets, gift concert ticket, or like devise, shall be deemed guilty of a misdemeanor and liable to indictment, and, on conviction thereof, shall be fined in a sum not less than fifty dollars nor more than five hundred dollars." *Mansf. Dig., sec. 1915.*

**4. REPLEVIN: Possession evidence of title.** Martin's possession of the horses in controversy at the time they were taken by Hodge is *prima facie* evidence of title. Any wrongful taking is not sufficient to shift upon him the burden of proving his title to the property and right to possession. If the possession of Martin and a wrongful taking from him were proven, and nothing more, he would be entitled to recover.

The evidence shows appellant proposed to dispose of his horses by lottery; and for that purpose sold two hundred and fifty tickets for sums amounting in the aggregate to $250, the full value of his horses. He, thereafter, undertook to hold the horses in trust for the ticket-holder who would hold the ticket which would be entitled to, or draw the prize, when the drawing of the lottery took place. This undertaking was illegal and void. It and the sale of the tickets did not affect plaintiff's title to or right to the possession of the horses. At the time of the drawing they were still in his possession. It was under-

Martin v. Hodge.

stood that he would deliver them to the holder of the ticket of the number corresponding to the number of the drawing of the black marble. Hodge did not hold that ticket; no one authorized to do so decided he did. There was, therefore, no implied permission given to him to take the horses when he did; circumstances implied the reverse. There is no evidence that he had express permission. Any one else, who did not have a ticket in Martin's lottery and never had one in any other lottery, might have taken possession of the horses at the time of the drawing as Hodge did, and, succeeding in riding them away without objection, hold them under a claim and right equally as good as that on which Hodge relies. · Hodge stands in no better attitude than he would have stood if he had held no ticket. His taking was wrongful. It was not necessary for Martin to introduce any evidence in respect to the lottery to establish his right to the horses. His right to recover is not dependent on that transaction.

Martin's right to recover does not depend on any disposition he may make of the horses in controversy. He can give them away. If the consideration of the gift is not deemed good in law, the gift will be only void as against creditors and purchasers. Hodge, so far as anything appears in evidence, would not have a right to complain in any kind of an action. He certainly has not in this. *Mansf. Dig., sec. 3376.*

The dismissal of the first action of replevin should not prejudice plaintiff's right to the horses. He was compelled to restore them to the possession of Hodge. He could not dismiss on any other condition. The dismissal placed the parties *in statu quo*. The statute expressly provides that such dismissals may be without prejudice to a future action. The evidence shows he did not concede Hodge's right to hold the horses as a prize or otherwise, by the dismissal. *Mansf. Dig., secs. 5102, 5103.*

5. Dismissal before trial no bar to another suit.

In giving the instructions above set forth, in so far as they are inconsistent with this opinion, and in not giving those asked for and refused as before stated, the court erred.    The motion for new trial should have been granted. .

The judgment of the court below is reversed, and this cause is remanded with an instruction to the court to grant appellant a new trial.