## WATKINS v. CURRY.

### Opinion delivered April 29, 1912.

1. CONTRACT—ILLEGALITY.—An obligation will be enforced, although indirectly connected with an illegal transaction, if it is supported by an independent consideration, so that the plaintiff does not require the aid of the illegal transaction to make out his case. (Page 420.)

2. SALES OF CHATTELS—VALIDITY.—Where a newspaper manager purchased an automobile under a conditional contract, reserving title in the vendor, the fact that the vendor knew that the purchaser intended to give the machine away in a popularity contest (conceding that such contest was in effect a lottery) did not affect the validity of the contract of sale. (Page 421.)

3. SAME—CONDITIONAL SALE—WAIVER.—The fact that the owner of an automobile sold it on credit, with reservation of title, knowing that the purchaser intended to use it in a popularity contest, will not be held to amount to a waiver of the reservation of title, nor did the fact that the vendor extended the time of payment of the purchase money amount to such a waiver. (Page 421.)

Appeal from Bradley Circuit Court; *Henry W. Wells*, Judge; affirmed.

### STATEMENT BY THE COURT.

This was a suit by Curry against Watkins to recover the possession of an automobile. The complaint is the usual one

in replevin, described the property, and alleged that appellee was entitled to the possession, that it was wrongfully detained, and the other formal allegations.

Watkins answered, disclaiming any interest in the property; alleged that he was holding the same as the agent. of A. L. Greene; asked that Greene be made a party, and that he be allowed to withdraw. Greene was made a party, and answered, denying that the car was wrongfully detained by himself or Watkins, and set up that he was entitled to the possession. He alleged that Curry had sold the car to James E. Hughes, who was editor and manager of the *Democrat News*, a newspaper published in Bradley County, and that plaintiff. sold the car to Hughes for the purpose of its being offered as a prize by Hughes in a voting contest; that he (Greene) entered the contest under the rules prescribed by the newspaper for the same; that he acted in good faith, and was put to expense and trouble to secure subscriptions to the *Democrat News*; that the contest was to close on the 15th day of July; that he had offered to continue securing votes to whatever time Hughes might arrange for the contest to close; that on the......... day of July Hughes absconded, and that there was no one to receive the votes of himself (Greene); that he offered his votes at the office of the *Democrat News*, and they were rejected, and he prayed judgment in his behalf for the car, and asked damages.

He also set up that Curry was estopped to claim any rights, if any he may have had in said car, for the reason that he knew all the time that the car was to be awarded to the person who complied with the rules and received the most votes in the prize contest, and encouraged, aided and abetted Hughes in the management of the contest.

There was a demurrer to the answer, which was overruled, and the issues of fact were submitted to a jury under instructions.

Curry testified that he was the agent for the sale of the Ford car in Southeast Arkansas; that he sold a car to Hughes, taking in payment therefor two notes, payable in thirty and sixty days, which notes expressed the contract, and one of which is as follows:

"$237.50. ·                    "Monticello, Ark., 4/28/1911.

"Thirty days after date I promise to pay to the order of Jack Curry, two hundred and thirty-seven and 50-100 dollars, for value received, negotiable and payable at Drew County Bank without defalcation or discount, and with interest from maturity until paid at the rate of 10 per cent. per annum. This note is given for agreed purchase price of the following property, towit: One Model "T" Ford Touring Car.

"And it is expressly agreed that the title to and ownership of and to said property shall not pass out of the said payees, but shall be and remain in them until the said sum, with interest and costs, shall be fully paid, and this note is not intended as a sale, but nothing more than an agreement to sell on the payment of the sum and interest as aforesaid. In case of default of payment said payee or his assigns may repossess himself of said property, and all partial payments shall be appropriated as rent of said· property. If not paid at maturity, this note, together with all other notes given for this purpose, shall become due and payable at the bank above named at once. It is well understood that, in case of loss or damage of said property while in my hands, or before the payment of this note, said loss shall be mine, and not that of the payee. The makers and indorsers of this note severally waive protest and notice thereof and diligence in collection.

(Signed) "Jas. E. Hughes."

The notes were identical, with the exception of the date of payment.

He stated that there was a cash payment of $250 besides the notes; said that the notes had not been paid.

On cross examination, Curry stated that Hughes, when he came to buy the car, told him that he was putting on a contest similar to a piano contest; that he was to put on several prizes; that he was thinking of buying an automobile and giving it away as a prize. He said that he didn't know before he sold the automobile that he was to use it as a prize; said when the note came due he made every effort to collect the note, but that Hughes begged for more time, and promised to pay it in a few days. Before the second note came due,

he placed the notes in the Warren bank for collection. A man by the name of Clugston came over and begged for a few days' more time, and he waited until the 5th of July. The sixty-day note fell due on June 28, 1911. At that time Curry says he had heard that the automobile was up in a prize contest. He knew nothing of the contest except what Clugston said. He didn't know whether those were facts or not; said: "I didn't care anything about it; I sold the car and took the notes;" said that at the time Hughes bought the car he (Curry) didn't know that he bought it for the purpose of awarding it as a prize in a newspaper contest in Bradley County.

Curry wrote a letter to the *Democrat News* on April 27, 1911, in which he stated in substance that he was glad to know that the *News* was having success with its contest, stating that success might be expected if the newspaper would hustle and its methods were legitimate, and concluded, saying; "With the best wishes, and knowing that you will have abundant harvest from your contest."

The witness concludes his testimony by stating that parties representing the newspaper had seen him before the car was sold, and told him that they were figuring on a contest, and were figuring on giving away a car and several other prizes. He told them that he was wanting to sell the car, and was going to place an agency in Bradley County somewhere.

On re-direct examination, he said that he didn't have any interest, directly or indirectly, in the car sold to Hughes; that he didn't sell the car for the purpose of putting it in a contest, but for the purpose of getting the money out of the car; said it was no interest whatever to him whether the newspaper people put on a contest or not.

On behalf of the appellants, testimony was introduced tending to shcw that about the 26th or 27th of April, Hughes was in the newspaper business at Warren, in Bradley County, Arkansas, and that he had a contest in the paper in which the automobile in controversy was offered as one of the prizes. Copies of the newspaper containing the advertisement and picture of the car were introduced, giving in detail the rules for the contest by which prizes were to be given away.

The names of various persons, under the rules of the contest, were to be nominated through the paper by any one desirous of so doing as candidates for "the automobile contest." The purpose of the contest, as declared, was to increase the circulation of the *Democrat News* by giving away valuable and costly prizes free, amounting to $1,155, to the eight most popular persons in the southeastern part of the State, the popularity to be determined by the number of yearly subscriptions secured and the number of papers sold.

The appellant Greene testified that he was nominated as one of the contestants, and contested for it, and that one week before the contest was to close, according to the advertisements, he was in the lead; that various other contestants had been in the lead before that; that on the 4th of July he was informed that Hughes, the manager of the paper giving the contest, was gone, and that he then offered his tickets to the *Democrat News*, and it refused to take them. He says that he was supposed to know by the paper as to how the contestants stood, and that on the 15th of July he got the most votes and claimed the machine. He said at the time he was in the contest he didn't know of any right Curry had in the automobile; says the car was supposed to be Hughes's property. No one knew that Hughes owed anything on it until after this controversy came up; that the machine was used by the management of the *Democrat News* regularly in driving about. He had between twenty and thirty thousand more votes, according to the count at the time he made it, than the next contestant to him, and therefore he claimed the automobile as having won it in a "popularity contest."

This is substantially the testimony upon which the court gave the following instruction:

"You are instructed that, notwithstanding you may find that the plaintiff, Curry, knew of the purpose of Hughes to offer the car in controversy as a prize in a contest, still such knowledge by plaintiff would not deprive him of his ownership of the car, or of his right to recover possession of same in this action, if it appears from the testimony that plaintiff relied upon the payment of the purchase price of the car by Hughes before said car was to be awarded as a prize, and that Hughes

in fact 'never paid for said car, so as to acquire title in himself before the institution of this suit."

The court further instructed the jury as follows:

"You are instructed that if you find from the evidence that plaintiff, Jack Curry, was the owner of the Ford touring car in controversy, and sold it to James E. Hughes on condition that the title was to remain in Curry until the car was paid for, and you further find from the evidence that Hughes never paid the price for which said car was sold him, but made default in payment for the purchase money of the car, then as a matter of law plaintiff continued to be the owner of said car, and was entitled to the possession of the same upon default in payment of the same according to the tenor and terms of the purchase money notes given by Hughes to plaintiff, and in that event plaintiff is entitled to recover in this action if Curry did not waive his title to said car."

The appellants prayed the court to instruct the jury, in substance, that if they found by a preponderance of the evidence that the automobile was sold by Curry to Hughes for the purpose of being put up as a prize, or that Curry, after the sale, consented for the automobile to be put up as a prize to be awarded by Hughes to any person becoming a candidate and receiving the highest number of votes in the popularity contest then being carried on by the *Democrat News*, that would constitute a waiver by Curry of the title reserved by him in the note; and further prayer that the court instruct that if the jury found that there was a contest in the newspaper as defined, and that A. L. Greene became a candidate in such contest, and received the highest number of votes, their verdict should be in favor of Greene. The court refused to so instruct the jury, and the appellants duly saved their exceptions, and have prosecuted this appeal.

*B. L. Herring*, for appellant.

1. Where the winner is determined by the exercise of skill, knowledge, judgment, effort or votes, etc., there is no "lottery." 91 Ark. 205-8; 71 Pac. 66; 19 Atl. 825.

2. Curry is bound by his consent, willingness and encouragement of the scheme, and no secret agreement nor reservation of title can defeat the ownership of a chattel acquired *bona*

*fide* for value.  Having elected to get his money "out of the contest," he should be held to his election.  76 Ark. 273; 91 *Id.* 319; 83 *Id.* 360; 88 *Id.* 106; 93 *Id.* 77-8.

3.  Where one who owns property with full knowledge of his rights suffers another to deal with it as his own, he is estopped as against a party purchasing in good faith who has been misled by his acquiescence.  16 Cyc. 764; 126 S. W. 968; 46 N. Y. 325; 7 Am. Rep. 341; 62 Mo. App. 85; 47 Pac. 695-7; 100 U. S. 580.  In view of the authorities *supra,* there is reversible error in the court's charge.

*John E. Bradley,* for appellee.

1.  The demurrer should have been sustained.  The answer fails to allege title in Greene, or to ask possession.

2.  The scheme was a lottery or gambling contract. 39 Pac. 707; 73 Mo. 647; 61 Ala. 177; 74 Mich. 264; 13 A. & E. Enc. Law, 1164 (1 ed.); 49 Ala. 396; Words & Phrases, "Lottery."

WOOD, J., (after stating the facts).  There is no testimony in the record to warrant the conclusion that appellee, Curry, estopped himself from setting up his right to the possession of the automobile under his contract with Hughes after the latter had failed to pay the purchase money.  The automobile was sold to Hughes, and the title was to pass on condition that he made the payments as specified in the notes, and on his failure to make such payments the title to the automobile did not pass out of the appellee.

Giving the testimony of the appellants its strongest probative force, it only tends to show that appellee knew at the time he sold the car to Hughes that the latter would use the car as one of the prizes in what is termed his "popularity contest" to promote the circulation of the *Democrat News;* but there is no testimony whatever to warrant the finding that appellee at the sale participated in the purpose of Hughes and sold the car for the purpose of having the same advertised as one of the prizes to be given away in the contest.

Therefore, conceding that the "popularity contest" scheme was a lottery, and within the rule of the evil denounced in *Burks* v. *Harris,* 91 Ark. 205, still appellee would be entitled to recover in this case, because the lottery or gaming trans-

action had no connection with the sale. The sale was not made for the purpose of promoting such transaction. The consideration for the sale of the automobile was entirely independent of any illegal use to which the automobile may have been applied after the contract of sale was entered into.

"An obligation will be enforced, although indirectly connected with an illegal transaction, if it is supported by an independent consideration, so that the plaintiff does not re quire the aid of the illegal transaction to make out the case. *Armstrong* v. *American Exchange Bank*, 133 U. S. 469, quoted in *Ashford* v. *Mace*, *ante*, p. 114. See also *Peay* v. *Pulaski Co unty*, *post*, p. 601; *Wood* v. *Stewart*, 81 Ark. 41.

The court, in one of its instructions, told the jury that the appellee was entitled to recover under his contract if the car had not been paid for, provided he had not waived his title to said car. This submitted to the jury the question whether or not the conduct of Curry, in connection with the sale of the automobile, was a waiver of his title and right to the possession of, the car. The instruction was really more favorable to the appellants than they were entitled to under the undisputed evidence.

The court did not err in refusing the prayer of appell ants for instruction. This instruction virtually assumed that th ere had been a completed sale of the automobile to Hughes. As the undisputed written contract showed that there had been no perfected sale, the instruction was abstract. Further-more, by granting the prayer the court would have told the jury that consent of the appellee for the automobile to be used in the popularity contest after the sale would have de-feated his recovery. That is not the law.

The evidence shows that the appellee expected that th e notes would be paid long before the popularity contest was advertised to close. True, he had extended the time for payment at the urgent request of Hughes more than once, but under the very last extension of payment the notes were due five days before the popularity contest was advertised to close. Under these circumstances, it can not be said that appellee consented to relinquish his right to the title and possession reserved in the notes by consenting that the auto-mobile should be used in the prize contest.

The instructions correctly presented the law applicable to the facts, and the verdict is sustained by the evidence. The judgment is therefore affirmed.