## MILLSAPS *v.* URBAN.

### Opinion delivered December 21, 1914.

1. SALES—COUPON CONTEST—QUESTION FOR JURY.—Defendant offered an automobile as a premium in a voting contest. *Held,* defendant was required to abide by the rules laid down by himself in the contest, and to accord all contestants the same treatment, and that under the testimony the jury would be warranted in finding that this had not been done.

2. SALES—COUPON CONTEST—BREACH OF CONTRACT—LIABILITY.—Where plaintiff entered into an oral agreement with defendant to work to secure votes in a contest for an automobile, with the understanding that if she secured the highest number of legal votes that she was to receive said automobile, and where plaintiff complied with all the conditions of the contest and secured the highest number of legal votes, plaintiff will be entitled to recover from defendant the value of the said automobile as shown by the testimony.

Appeal from Garland Circuit Court; *C. T. Cotham,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellant advertised that he would give away an automobile under the conditions and in accordance with certain rules set forth in literature distributed by him.

His plan was that he would furnish coupons to certain business houses in the city of Hot Springs which had become members of the Business Men's Co-operative Club, a name given to the business houses which had arranged to procure these coupons from him, and which are hereinafter designated as club members, and these coupons were to be given by the members of this club to their customers at the rate of one coupon per each five cents' worth of merchandise purchased from the club member, and the holders of these coupons were entitled to cast them as ballots in a popularity contest for some lady contestant for this automobile. It was advertised that the contest would close on the 30th day of April, 1911, at 8 p. m., at which time there was to be a final count of the ballots and an award of the prize, but prior to this final count there was to be a count each Saturday night of the votes cast that week and an announcement of the standing of the candidates made at the end of each week.

Appellee entered the contest, and led all the other contestants until the final result was announced. She testified that appellant told her he had modified the rules of the contest to permit ballots to be cast, not only upon coupons issued for purchases made from members of the club, but that coupons might be issued upon collections made for such members by contestants upon the same terms as in cases of purchase of merchandise direct from such members. Appellee thereupon undertook the collection of various accounts given her for that purpose by club members and cast for herself the coupons thus earned.

Appellant testified that a Mrs. Coates was also a contestant, and that on the last Wednesday of the contest Mrs. Coates sold her chances to a man named Bert Walls, who ran a cigar stand in one of the hotels in Hot Springs.

The judges who had been appointed to conduct the contest, testified that, after this, coupons representing 1,000 votes each were cast for Mrs. Coates in large numbers, and that all of them were issued by Mr. Walls. These judges reported this fact to appellant and protested to

him that these coupons were not being voted in accordance with the rules of the contest, as they understood them, but they were told by appellant that any member of the club could buy any number of votes and do with them whatever he pleased, and that the coupons did not have to represent actual sales of merchandise at all and that, as judges, they were only expected to count and certify the coupons which had been voted as they found them. The coupons were so counted and Mrs. Coates was found to have the majority, but to make this majority it was necessary to include the coupons issued by Mr. Walls.

The 30th of April proved to be Sunday and a notice was published in a daily paper that the contest would be extended until Tuesday of the following week, and while it is not certain that coupons were cast after Saturday for either of the contestants herein named, it is altogether probable that they were cast for both of them after that date. But appellee says she was 104,000 votes ahead when the voting closed on Saturday.

Appellee says that appellant's representations to her, as to how he would award the automobile, induced her to enter the contest and that his statement of its terms constituted a contract on appellant's part to award the automobile to her, if she complied with the conditions imposed, and received the largest number of votes. The case was tried in her behalf on the theory that appellant and Walls conspired together to defraud her out of the automobile, and she testified that she complained to appellant about his conduct of the contest, and that he told her he would not give her twenty-five cents for her chance and that any one could enter the contest on the last day, and that he would sell any one all the chances he wanted. Appellant offered no proof whatever in his own behalf, but insists that appellee's proof is insufficient to establish the commission of any fraud, or the breach of any contract.

At her request the court gave the following instruction:

"If the jury find from the evidence that the plaintiff entered into an oral contract or agreement with the defendant to work to secure votes in the contest for an automobile, with the understanding that if she secured the highest number of legal votes that she was to receive said automobile, and further find that the plaintiff fully complied with all the conditions on her part to be performed and secured the highest number of legal votes, but that defendant breached the contract between the plaintiff and defendant, and on account of said breach the plaintiff was not declared the winner of said contest, and failed to secure said automobile, you will find for the plaintiff for the value of said automobile as shown by the testimony."

Appellant requested the court to charge the jury as follows:

"The court instructs you that before you can find for the plaintiff in this case you must first find from the evidence, by a preponderance of the proof, that on the 30th day of April plaintiff was the leading contestant in the contest; second, that there was a conspiracy to defraud between the defendant and Bert Walls; third, that in furtherance of such conspiracy to defraud, Bert Walls purchased the chances of a young lady whose name was being run in the contest; and that the defendant and Bert Walls cast more than a hundred thousand illegal votes in such race; fourth, that such votes so cast were illegal, and were known by the defendant to be illegal, and were cast by him in furtherance of such conspiracy to defraud the plaintiff; fifth, that she demanded of the plaintiff and was refused the automobile referred to in the evidence."

This instruction was modified by the addition of the following clause: "Unless you should find from the evidence that the defendant breached the contract between himself and plaintiff, after the plaintiff had performed all of the conditions on her part to be performed." And, over appellant's objection to this modification, the instruction was given as modified.

At the request of appellant the court gave five instructions on the subject of fraud, and upon the quantum of proof required to establish it.

There was a verdict in appellee's favor for the value of the automobile, and this appeal has been duly prosecuted.

*C. C. Sparks* and *Wm. G. Bowie.*

1. No fraud was shown. It is never presumed. 37 Ark. 149; 92 *Id.* 518; 20 Cyc. 120; 44 Atl. 247; 80 Mo. App. 22.

2. There is no evidence of collusion or conspiracy. All the votes cast for Mrs. Coates were in accordance with the rules and legal and there is no evidence that any votes were cast after Saturday. Hence, there is an absolute failure of proof to sustain the judgment.

*Appellee, per se.*

The proof of fraud is clear and convincing and there is no error in the instructions.

SMITH, J., (after stating the facts). No point is made as to the illegality of the transaction out of which this litigation arose. No contention is made that this was a lottery, or that the element of chance entered into the award of the prize. Had such been the case, the entire transaction would have been illegal and the courts would have refused any aid in enforcing any rights depending upon it. *McDaniel* v. *Orner,* 91 Ark. 171; *Watkins* v. *Curry,* 103 Ark. 414; *Carey* v. *Watkins,* 97 Ark. 153; *Burks* v. *Harris,* 91 Ark. 205; *Wood* v. *Stewart,* 81 Ark. 41.

(1) The jury was warranted, under the evidence, in finding that appellee became a contestant upon the condition that coupons would be issued by the members of the club, only to purchasers of goods from them, or to persons making collections for them. Appellant, of course, could have prescribed any terms he saw fit for the use of the coupons which he furnished the members of the club, but fairness required that the same terms be pre-

scribed for all contestants and that the contest be carried out upon the terms which induced persons to become contestants, and that no changes should thereafter be made, to which the contestants themselves did not assent. The jury might have found from the evidence that appellant induced appellee to become a contestant by the representation made to her that votes would be permitted only where goods had been sold by club members, or collections had been made for them, and that appellee would have earned the prize had that engagement been kept, but that appellant permitted votes to be cast in sufficient numbers to defeat appellee, which were not based upon either sales or collections.

(2) The instruction given at appellee's request correctly submitted these issues to the jury, and the modification which the court made of appellant's instruction, set out above, was a proper one.

Finding no prejudicial error, the judgment of the court below is affirmed.