POLSTER *v.* LANGLEY.

4-6094                                         144 S. W. 2d 1063

Opinion delivered November 25, 1940.

*Arthur L. Adams,* for appellant.

*Ira C. Langley* and *E. G. Ward,* for appellee.

SMITH, J. Appellant brought this suit to foreclose two mortgages, and the decree ordering their foreclosure was affirmed by this court March 18, 1940. *Dalton* v. *Polster,* 200 Ark. 168, 138 S. W. 2d 64. One of the defenses interposed was that the notes which the mortgages secured were barred by the statute of limitations. There was testimony to the effect that payments had been made on each of the notes, which kept them alive. This was denied. The court below apparently found they had not been made, but inasmuch as the mortgagees had paid taxes on the land, this was held to extend the life of the

notes and a foreclosure was decreed. We found it unnecessary, on the appeal from that decree, to consider the question whether payments had been made by the mortgagor, and that question was not decided by us, but we affirmed the foreclosure decree on the theory that the tax payments had kept the debt alive. The mortgagor was represented in that litigation by Ira C. Langley and E. G. Ward, members of the Clay county bar.

After the affirmance of the foreclosure decree, the mortgagee filed in the chancery court a petition for the appointment of a receiver to collect the rents on the mortgaged land pending sale under the foreclosure decree. Langley and Ward filed an intervention, in which they alleged, and later proved, that, prior to the institution of the foreclosure suit, they received from the mortgagor a deed to an undivided half interest in the mortgaged land. They alleged that at the time of their purchase of this undivided half interest, the mortgages were apparently barred by the statute of limitations, there being no indorsements on the margin of the record where the mortgages were recorded of any payments which had been made, and both notes were then more than five years past due. The deed to Langley and Ward was executed June 15, 1937, and it was recorded on that day. The suit to foreclose was filed March 12, 1938.

The deed to Langley and Ward recited a consideration of $1, cash in hand paid, and the performance of legal services. What these services were, and when rendered, is not disclosed in the record; but no issue appears to have been raised on this question. It is assumed in the briefs for appellant that the services were in connection with the foreclosure suit, but there is no testimony to support that assumption, and, as a matter of fact, the deed was executed nine months before the foreclosure suit was filed.

Interveners joined in the prayer for the appointment of a receiver, and prayed the sale of the land for the purpose of partition upon the allegation that the land was incapable of division in kind. There was a prayer

that the land be sold and the proceeds of the sale be divided in proportion to the respective interests of the parties.

A motion was filed to dismiss the intervention, which alleged that, at the time of the institution of the foreclosure suit, the wife of the mortgagor had become insane, and a guardian *ad litem* was appointed to defend for her, and that E. G. Ward was appointed and served as such guardian, and that the suit proceeded to a final decree before Ward and Langley disclosed the fact that they claimed an interest in the land. It is alleged, therefore, that as Langley and Ward were the attorneys for the mortgagor in the original foreclosure suit, and did not disclose their claim to an interest in the land, they may not now be heard to assert that interest.

It appears, from the former opinion, that one note became due January 12, 1931, the other on November 1, 1931, and the suit to foreclose was filed March 12, 1938. The notes were, therefore, barred unless payments had been made which kept them alive. The former opinion, as has been said, held that the payment of taxes served that purpose, and that the lien of the mortgages remained effective as between the parties thereto.

The interveners alleged that there are no valid credits made or authorized by the mortgagors, and that "There are no credits indorsed on the margin of the mortgage records where said mortgage was recorded, as required by § 9465, Pope's Digest, in order to be effective and binding on third parties." This question of fact was submitted on the record in the original case, and the decree imports the finding that there were no cash payments, and the prayer of the intervention was granted, and this appeal is from that decree.

This finding cannot be said to be contrary to the preponderance of the evidence. We have, therefore, the case of mortgages kept alive by tax payments which were not indorsed upon the margin of the record, as required by §§ 9436 and 9465, Pope's Digest, to preserve the lien thereof as against third parties. The insistence is that interveners should not be regarded as third parties be-

cause of their connection with the foreclosure proceedings, in which case they should have made known their claim to an interest in the land.

Interveners might have interposed and asserted their interest in the land at that time; but we do not think they were required to do so, nor have they lost that interest through their failure to do so. There was no necessity that they should do so at that time. Their deed had been of record for nearly nine months when the foreclosure suit was filed, and there is no showing that the consideration for the deed had any relation to the foreclosure suit, which was not then pending. The mortgagee had constructive notice at least of the existence of the deed, and might have made interveners parties to the foreclosure suit had this been desired. The defense to the foreclosure suit was that the lien of the mortgage had expired as against the mortgagor, and it was not essential to the maintenance of that defense that interveners make themselves parties to that suit.

The interveners are, of course, third parties to the mortgages unless their connection with the foreclosure suit, as attorneys for the mortgagor, precludes them from asserting that relation; and we think it does not. They violated no duty to their client in attempting to show that the mortgage lien had expired, and it would not have aided that defense to show that they claimed an interest in the mortgaged property, an interest which they had acquired before the foreclosure suit was commenced. They successfully maintained the defense that no cash payments had been made, and would have defeated the lien of the mortgages but for the holding, on the first appeal, that the tax payments had kept the mortgages alive, payments not noted on the margin of the mortgage record.

It is argued that, had interveners made any inquiry before taking their deed, they would have been put upon notice of facts which, if pursued, would have led to the knowledge that the lien of the mortgages subsisted between the parties thereto. But they were not under that duty. They had the right to rely upon the

face of the mortgage record as it appeared when they purchased the undivided half interest in the land.

It is provided by § 9435, Pope's Digest, that "Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before; which filing shall be notice to all persons of the existence of such mortgage." The section of the statutes, just quoted, is taken from the Revised Statutes, and and it has been held, in many cases since its enactment, that one may purchase mortgaged property free of the lien of the mortgage, if the mortgage be not of record, and that this is true even though the purchaser has actual knowledge of the mortgage at the time of his purchase.

Section 9436, Pope's Digest, reads, in part, as follows: "No agreement for the extension of the date of the maturity of the whole or any part of any debt or note secured by mortgage, deed of trust, or vendor's lien, or for the renewal thereof, whether made in writing or otherwise, and no written or oral acknowledgment of indebtedness thereon, shall, so far as the same affects the rights of third parties, operate to revive said debts or extend the operation of the statute of limitations with reference thereto unless a memorandum showing such extension or renewal is indorsed on the margin of the record where such instrument is recorded, which indorsement shall be attested and dated by the clerk."

This section has been construed to mean that, where the debt secured by the recorded mortgage is apparently barred, and there is no indorsement of payment or extension agreement on the margin of the record where the mortgage is recorded keeping it alive, the mortgage then partakes of the nature of and, in effect, becomes an unrecorded mortgage, and the lien thereof is not effective against third parties.

In the case of *Wells* v. *Farmers' Bank & Trust Co.,* 181 Ark. 950, 28 S. W. 2d 1059, it was said: "In construing this statute in the case of *Morgan* v. *Kendrick,* 91 Ark. 394, 121 S. W. 278, 134 Am. St. Rep. 78,

it was said: 'The effect of that statute, as to strangers to the transaction, is that when the debt secured by a mortgage is apparently barred by limitation, and no payments which would stay the limitation are indorsed on the margin of the record of the mortgage, it becomes as to such third parties an unrecorded mortgage; and like an unrecorded mortgage it constitutes no lien upon the mortgaged property, as against such third party, notwithstanding he has actual knowledge of the execution of such mortgage. (Citing cases.)' See, also, *Clark* v. *Lesser*, 106 Ark. 207, 153 S. W. 112; *Merchants & Planters' Bank* v. *Citizens' Bank of Grady*, 175 Ark. 417, 299 S. W. 753." To the same effect see, also, *Hamburg Bank* v. *Zimmerman*, 196 Ark. 849, 120 S. W. 2d 380.

In the late case of *Johnson* v. *Lowman*, 193 Ark. 8, 97 S. W. 2d 86, suit was brought to foreclose a recorded mortgage, on which payments had been made on the debt which it secured before the bar of the statute of limitations had fallen, but which had not been indorsed upon the margin of the mortgage record. In that case it was held (to quote a headnote) that "Where, as to third parties, an action to foreclose a mortgage is barred, it cannot be revived by an entry on the record of a payment made before the bar attached; in such case, the rights of third parties are not affected, even though they have actual knowledge of such payments." See, also, *Beith* v. *McKenzie*, 191 Ark. 353, 86 S. W. 2d 176; *Shouse* v. *Scovill*, 200 Ark. 441, 139 S. W. 2d 240.

Being third parties, and having taken their title at a time when the mortgage debt was apparently barred, there being no indorsement on the margin of the mortgage record of any payments which had been made on the mortgage debt, interveners took title free from the lien of the mortgages. The indorsement of the alleged cash payments on the margin of the mortgage records would not have arrested the running of the statute of limitations even as between the parties to the mortgages, for the reason that the cash payments were not made.

The decree of the court below, based upon this finding, is, therefore, affirmed.