SHUFFIELD v. RANEY.

852                                    287 S. W. 2d 588

Opinion delivered March 5, 1956.

*Bailey, Warren & Bullion,* for appellant.

*Rex W. Perkins, Neill Reed* and *E. J. Ball,* for appellee.

J. SEABORN HOLT, Associate Justice. September 1, 1954, appellant, Dr. Joe F. Shuffield, filed the present suit ''to remove cloud on title'' to the following real estate: ''The West 35 acres of even width, or all of the Southwest Quarter of the Southeast Quarter, except the East Half of the East Half of the East Half of said Southwest Quarter of Southeast Quarter of Section 13, Town-

4

ship 12 North, Range 9 West, 35 acres more or less with all appurtenances thereto belonging.''

There is little if any dispute as to material facts. On January 6, 1953, appellees, Raneys, for valuable consideration executed a mortgage covering the above real estate and in addition ''all fixtures and appliances now used and being a part of the drug business operated under the trade name of Griffin Drug Company, now owned by grantors as the same now located in the Cleburne County Bank Building, Heber Springs, Arkansas, except fixtures of Yarnell Ice Cream Company.'' This mortgage was given by the Raneys to secure a loan of $15,000 from Dr. Shuffield and was evidenced by a note of even date. There has been paid on the note $2,500.

March 18, 1954, the Raneys and Ira Fullerton, Trustee, entered into an agreement to dispose of the real estate herein involved, upon which Dr. Shuffield held a mortgage,—by means of a lottery. This agreement contained this recital: ''Parties of the first part, being desirous of disposing of real estate hereinafter more fully described, to the lucky purchaser of a numbered ticket of tickets to be sold at one dollar per ticket as a chance on being the winner of the real estate more fully hereinafter described, and in furtherance of the desire of the parties of the first part to sell said tickets through the sponsorship of the Leonard Stark Post No. 3543, Veterans of Foreign Wars, Heber Springs, Arkansas as their sponsors, and whereas the sponsors of said sale, the Leonard Stark Post No. 3543, Veterans of Foreign Wars, is to receive five per cent on the sale of each and every ticket, and whereas other salesmen agreed upon and designated by the parties of the first part and the Trustee, Ira Fullerton, are to receive fifteen per cent on the sale of each ticket, and whereas the parties of the first part are to receive the remaining eighty per cent of each ticket sold, parties of the first part simultaneously with the execution of this agreement have delivered to the said Ira Fullerton, as Trustee for the winner of the lucky ticket, a warranty deed free of all incumbrances, (except that all

liens, mortgages or debts, if any, will be satisfied in full before August 1, 1954) to the following described real estate, located in Cleburne County, Arkansas, to-wit: . . . who in turn, as Trustee for the holder of the lucky ticket shall immediately upon the announcement of the holder of the lucky ticket at the drawing to be held at the Band Shell in Heber Springs, Arkansas, at the Annual Reunion on August 7, 1954, execute to said holder of the lucky ticket a trustee deed conveying the above described property." This agreement was signed by the Raneys and Fullerton, Trustee. On the same day (March 18, 1954) a deed was made by the Raneys to Fullerton, Trustee, containing this provision: "That we, Wayne Raney and Lois (or Loys) Raney, his wife, for and in consideration of one dollar and other considerations hereinafter stated and agreed upon, to us in hand paid by Ira Fullerton, Trustee, do hereby grant, bargain, sell and convey unto the said Ira Fullerton, Trustee for the holder of the lucky ticket as expressly understood by an agreement this day entered into by and between the grantors and the trustee herein, and unto his successors and assigns, the following described lands lying in the State of Arkansas and County of Cleburne, to-wit: . . ." (describing lands here involved).

Following the execution of these instruments, tickets, or chances, were sold for $1.00 each. A drawing was had August 7, 1954, and appellee, Walter Thomas, drew the lucky number, or ticket, and a deed was made to him by the Trustee, Ira Fullerton, which contained this provision: ". . . for and in consideration of one dollar and other considerations as expressed in said deed and contract, And, whereas Ira Fullerton acquired and holds the title to said lands as trustee without declaration, and it being the desired and expressed purpose by the grantors of said lands and property to the said trustee, and it being the purpose of this trust, that the winner or holder of what is known as the lucky ticket drawn from the sale of tickets and sponsored by the Leonard Stark Post No. 3543, Veterans of Foreign Wars, Heber Springs, Arkansas, have of and receive from the said Ira Fullerton, as

trustee, the lands hereinafter described, and that the terms thereof be entered and the conveyance as executed in conformity thereto, Now, therefore, I, Ira Fullerton, Trustee, do hereby declare and covenant that the title to the lands herein described was acquired for the purpose of conveying the same to the winner or holder of the lucky ticket in fee simple title, and for said purposes and none other whatever was the title to said lands acquired by me as such trustee. And, in consideration of the premises and of the trust reposed in me, I, Ira Fullerton, as trustee aforesaid, do hereby grant, bargain, sell and convey unto the said Walter Thomas, and unto his or her heirs and assigns forever, the following real estate, lying in the County of Cleburne, and State of Arkansas, to-wit: . . .'' (describing land here involved).

When the above agreement and two deeds were executed Dr. Shuffield's mortgage had not been recorded.

Trial resulted in a decree in favor of appellees and this appeal followed.

For reversal appellant insists that: ''I. The defendants, Ira Fullerton and Walter Thomas, are not bona fide purchasers. II. The plaintiff, mortgagee, is entitled to affirmative relief.''

Our rule is well settled that an unrecorded mortgage is valid as between the parties and good except as to subsequent purchasers for value. ''But an unrecorded mortgage is still good and binding between the parties. It constitutes a valid lien on the property, except as to the legal rights of third parties,'' *Morgan* v. *Kendrick,* 91 Ark. 394, 121 S. W. 278, 134 Am. St. Rep. 78. On the record presented we have concluded that the trial court erred in holding in effect that Dr. Shuffield's mortgage was not superior to the rights of appellees. Dr. Shuffield was not a party to the plan or scheme of appellees that resulted in appellee, Thomas, securing a deed to the property in question for the consideration of a $1.00 lottery ticket. This consideration was illegal and amounted to no consideration at all, made so by Article 19, Section 14, of the Constitution of the State of Arkansas, which pro-

vides in short plain language: "Lotteries Prohibited.—
No lottery shall be authorized by this state, nor shall the
sale of lottery tickets be allowed." We have accepted
the following definition of the word lottery: "A lottery
is a species of gaming, which may be defined as a scheme
for the distribution of prizes by chance among persons
who have paid, or agreed to pay, a valuable consideration
for the chance to obtain a prize," *Longstreth* v. *Cook, Sec.
Ark. Racing Comm.,* 215 Ark. 72, 220 S. W. 2d 433, and in
comment we said: "It appears therefore that to consti-
tute a lottery it is essential not only that the element of
chance is present, but also that it controls and determines
the award of the prize whatever it may be."

One who gives an illegal consideration cannot be ac-
corded the status of a bona fide, or innocent, purchaser.
See *Gerdes, et al.* v. *Reynolds,* 28 N. Y. S. 2d 622. Since
appellees, Wayne and Lois (or Loys) Raney and Fuller-
ton, Trustee, entered into, planned and carried out the
scheme to dispose of the property involved, and the Ra-
neys and Fullerton, Trustee, received full value for the
property, they, therefore, risked nothing by the lottery
and appellee Thomas, although the consideration, $1.00,
which he paid was illegal, acquired title to the property.
The principle of law announced in *Carey* v. *Watkins,* 97
Ark. 153, 133 S. W. 1016, applies here. We there said:
". . . a person cannot be said to have lost his property
when he receives its value in exchange for its possession.
Carey received the value he placed upon his wagon, and
did not risk anything on the lottery." Appellee Thomas'
title, however, is subject to the lien of Dr. Shuffield's
mortgage. Inasmuch as Thomas' title is good as against
the Raneys, Dr. Shuffield is not entitled to all the relief
sought by his complaint, which asks that the deeds to
Fullerton and Thomas be declared void and canceled. Dr.
Shuffield is, however, entitled to a decree establishing
the priority of his mortgage lien, to the end that his rights
may be protected against the possibility of a later sale
by Thomas to a bona fide purchaser. The question of
marshalling the various properties covered by the mort-

gage need not be discussed at present, as that issue will not arise unless a foreclosure of the mortgage is sought.

Accordingly, the decree is reversed and the cause remanded for further proceedings consistent with this opinion.

Chief Justice SEAMSTER and Justice McFADDIN dissent.

ED. F. McFADDIN, Associate Justice (dissenting). I agree with all that the majority opinion says about the condemnation of lotteries and the fact that the Courts of this State will not aid anyone to prevail through a lottery; but the problem in this case cannot be solved by such pronouncements. As I understand our cases, the rule is that, when a party asks the Courts to aid him, he must prove that he and those through whom he claims are clear of the stigma of lottery in the transaction in which he is asking the courts to help him. Such rule is the basis of my dissent.

Here, Dr. Shuffield is entirely clear and innocent of participating in any lottery, but the person through whom he claims title—Mr. Raney—was not clear of such participation; and Raney's participation affects the claim of Shuffield *because Shuffield's mortgage was not recorded until after Thomas had recorded his deed* and taken actual possession of the property. I emphasize that Thomas recorded his deed and went into actual possession of the property *before* Dr. Shuffield recorded his mortgage; and that Dr. Shuffield brought this suit, and not Thomas.

Because of the wording of our mortgage recording Statute (§ 51-1002, Ark. Stats.),[1] the matter of a *bona fide* holder does not enter into this case. An unrecorded mortgage is good only between the parties. If Thomas had known all about Raney's mortgage to Shuffield and had paid Raney a valuable consideration for the property

---

[1] Section 51-1002, Ark. Stats., reads: "Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the Recorder's Office for record and not before; which filing shall be notice to all persons of the existence of such mortgage."

*before* the Shuffield mortgage was recorded, then Thomas would have received a title superior to the Shuffield mortgage. An unrecorded mortgage is not binding upon a third person, though such person may have actual notice of its existence. *Fry* v. *Martin,* 33 Ark. 203; *Dodd* v. *Parker,* 40 Ark. 536; *Merchants & Farmers Bank* v. *Citizens Bank,* 125 Ark. 131, 187 S. W. 650; *Bridges* v. *Haney,* 132 Ark. 166, 200 S. W. 788; *Simpson* v. *First Nat. Bank,* 173 Ark. 284, 292 S. W. 138; *Polster* v. *Langley,* 201 Ark. 396, 144 S. W. 2d 1063.

Since his mortgage was not recorded prior to Thomas' possession, Shuffield's right to recover the property is the same as Raney's right to recover would have been. The question, then, is: could Raney have recovered the property herein from Thomas? The answer is NO; and *Carey* v. *Watkins,* 97 Ark. 153, 133 S. W. 1016, is directly in point.[2] Carey owned a wagon and raffled it off for $45.00, intending for the winner to have it. The raffle was held. It was declared that Watkins was the winner and Watkins' father went to Carey's house and got the wagon, with Carey present and making no objections. Later, Carey sought to recover the wagon on the claim that Watkins did not win it. This Court held that Carey had no right to recover, saying:

". . . the illegal contract having been executed, the law leaves the parties where they placed themselves and affords no relief to either."[3]

[2] There are several other Arkansas cases involving lotteries: see *Martin* v. *Hodge,* 47 Ark. 378, 1 S. W. 694; *Grant* v. *Owens,* 55 Ark. 49, 17 S. W. 338; *Burks* v. *Harris,* 91 Ark. 205, 120 S. W. 979; *Watkins* v. *Curry,* 103 Ark. 414, 147 S. W. 43; and *Simpson* v. *Brooks,* 208 Ark. 1093, 189 S. W. 2d 364.

[3] The majority opinion quotes *Carey* v. *Watkins* to this effect: "A person cannot be said to have lost his property when he receives its value in exchange for its possession. Carey received the value he placed upon his wagon and did not risk anything on the lottery." That quotation emphasizes the point I am trying to make. The evidence here shows that from the proceeds of the raffle Raney received somewhere between $2,500.00 and $15,000.00 for the property. Certainly that was substantial and, since he could not recover, neither should Shuffield; because his rights could be no greater than Raney's, due to the failure to record the mortgage before Thomas acquired actual possession.

So here: Raney executed the deed to Fullerton and Fullerton to Thomas and Thomas went into possession; so certainly Raney could not have recovered if he had brought the suit. Since Thomas' possession occurred prior to the time Shuffield recorded his mortgage, Shuffield stands only in the shoes of Raney, and, since Raney could not recover, neither can Shuffield, because " . . . the law leaves the parties where they placed themselves and affords no relief to either."

Now if Shuffield had been in possession of the property and Thomas had brought this suit, then Thomas could not have recovered, because ". . . the law leaves the parties where they placed themselves." Therefore, since Shuffield is in the shoes of Raney, and since Raney could not have recovered, I think we should apply the rule stated in *Carey* v. *Watkins (supra)*: ". . . the law leaves the parties where they placed themselves."

Therefore, I dissent from the majority holding.