The Honorable Jimmy Jeffress State Senator Post Office Box 1695 Crossett, AR 71635-1695
Dear Senator Jeffress:
You have presented the following question for my opinion:
 Are eight-liner machines that dispense gift certificates as representations of value redeemable for non-cash merchandise prizes, toys or novelties legal in the State of Arkansas? If so, what restrictions would apply?
RESPONSE
The answer to your question will depend on various factual matters that I am not in a position to determine. For this reason, I cannot answer your question definitively. However, I will discuss the applicable law, from which you can ascertain the types of facts that will be pertinent to the issue.
Arkansas' anti-gambling statutes, A.C.A. § 5-66-101 et seq., contain a provision that prohibits "gaming devices," which are devices that are "adapted, devised, or designed for the purpose of playing any game of chance, or at which money or property may be won or lost." A.C.A. §§5-66-104. Accord, Sharp v. State, 350 Ark. 529, 88 S.W.3d 848 (2002). The Arkansas Supreme Court has also stated that "[w]here the machine is played to win or lose by hazard of chance, it is a gaming device." Sharp,350 Ark. at 534, 88 S.W.3d at 852, citing Pre-Paid Solutions, Inc. v.City of Little Rock, 343 Ark. 317, 34 S.W.3d 360 (2001) and Howell v.State, 184 Ark. 109, 40 S.W.2d 782 (1931).
Arkansas law excepts "amusement devices" from the prohibition against "gaming devices." See A.C.A. § 26-57-402. In other words, "amusement devices" do not constitute prohibited "gaming devices." The term "amusement device" is defined as follows:
As used in this subchapter, unless the context otherwise requires:
 (1) "Amusement devices" means any coin-operated machine, device, or apparatus which provides amusement, diversion, or entertainment and includes, but is not limited to, such games as radio rifles, miniature football, golf, baseball, hockey, bumper pool, tennis, shooting galleries, pool tables, bowling, shuffleboard, pinball tables, marble tables, music vending phonographs, jukeboxes, cranes, video games, claw machines, bowling machines, countertop machines, novelty arcade machines, other similar musical devices for entertainment, and other miniature games, whether or not such machines show a score, and which are not otherwise excluded in this subchapter[.]
A.C.A. § 26-57-402(1)
The following statutory definitions, which appear in A.C.A. § 26-57-402
after the above-quoted definition of "amusement device," are also pertinent to the determination of whether a particular device is excepted from the prohibitions of the anti-gambling statutes:
 (2)(A) "Any money or property", "other articles", "other valuable things", or "any representative of anything that is esteemed of value", as used in the antigambling statutes, § 5-66-101 et seq., shall not be expanded to include:
 (i) A free amusement feature such as the privilege of playing additional free games if a certain score is made on a pinball table or on any other amusement game described in this section; or
 (ii) Toys, novelties, or representations of value redeemable for those items which are won by the player of a bona fide amusement game or device which rewards players exclusively with merchandise limited to toys, novelties, or representations of value redeemable for those items, which have a wholesale value of not more than ten (10) times the cost charged to play the game or device once or five dollars ($5.00), whichever is less.
 (B) In the event of the accumulation of redeemable representations of value by any player, no toy or novelty having a wholesale value of more than twelve dollars and fifty cents ($12.50) may be given or awarded by any amusement machine operator or redeemed by any player. Said toys and novelties shall be displayed in a single area on each premises. Furthermore, each operator shall maintain records validating the wholesale value of said toys and novelties. Said toys and novelties shall be located solely on the premises where the game is played;
 (3) "Coin-operated" means any machine, device, or apparatus which is operated by placing through a slot or any kind of opening or container any coin, slug, token, or other object or article necessary to be inserted before the machine operates or functions but does not include any machine or device which is classified by the United States Government as requiring a federal gaming stamp under applicable provisions of the Internal Revenue Code;
 (4) "Novelty" means an article of trade whose value is chiefly decorative, comic, or the like, and whose appeal is often transitory;
 (5) "Person" means and includes any individual, firm, association, company, partnership, limited liability company, corporation, joint-stock company, club, agency, syndicate, the State of Arkansas, county, municipal corporation or other political subdivision of this state, receiver, trustee, fiduciary, or trade association; and
 (6) "Toy" means a small article of little value but prized as a souvenir or for some other special reason, a trinket, a knickknack, or a bauble.
A.C.A. § 26-57-402(2)-(4). The above-quoted provision is commonly referred to as the "Chuck E. Cheese law," because it permits certain types of amusement devices, often designed for children, that provide either a low-value pay-off, or no pay-off, and are engaged in primarily for amusement.
The Arkansas Supreme Court has had occasion to evaluate various types of devices for the purpose of determining whether they constituted prohibited "gaming devices" or permissible "amusement devices." For example, in State v. 26 Gaming Machines, 03-173 (Ark. 2-5-2004), the court upheld the lower court's finding that three "countertop Megatouch machines" were not "gaming devices" per se. These "countertop Megatouch machines" contained fifty to seventy different games, including draw poker, joker poker, and blackjack. They did not contain any type of pay out mechanisms, such as hoppers or chutes for monetary winnings or pre-printed tickets. The court also upheld the lower court's finding that the State had failed to prove that the machines had been used for the purpose of gambling, because it failed to show there was any reward for playing the machines. The court concluded that the three countertop Megatouch machines qualified as "amusement devices."
In contrast, in Sharp v. State, supra, the court held that twenty-three "video arcade machines" were illegal "gaming devices." The machines in question were of two types: video poker and video slot machines. A player could play the video poker machine by purchasing credits. Depending on the outcome of play, which involved choosing which cards to keep and which to discard, the player either won or lost credits. Winning credits entitled the player to continue to play, or, if a player had won sufficient credits, to redeem the credits for a prize. On the slot machines, a player won or lost credits based upon what characters appeared on the monitor. If players won on the slot machines, they received credits that allowed them to continue to play or to redeem the credits for prizes. The owners of the machines argued that they were permissible "amusement devices." But the court rejected that argument, noting that the exemplary list of "amusement devices" that is set forth in A.C.A. § 26-57-402 does not include video poker or slot machines.
Similarly, in Pre-Paid Solutions, Inc. v. City of Little Rock,343 Ark. 317, 34 S.W.3d 360 (2001), the court held that a certain type of telephone-card vending machine was an illegal gaming device. The court gave the following description of such machines:
 The machines operate as follows. A patron places a $1 bill in the machine, and the machine prints an "Emergency Long Distance Telephone Card" good for three minutes of long distance. At the same time, the machine registers a number of play credits. The patron may then play a game on the machine "similar to tic-tac-toe on a 3 x 3 matrix consisting of various symbols which may be lined up for additional points." These points may then be redeemed for a cash prize ranging from $1 to $1,000. Additionally, after using the prepaid telephone card, the patron may mail the used card to Appellants for a supplemental drawing for various prizes such as electronics or airline tickets. If a patron does not wish to purchase a telephone card but still wants to play the game, he or she may use one of the self-addressed, stamped post cards provided at the store and mail it to Appellants for a free-play certificate. A patron may then redeem the free-play certificate for a $1 bill to play the game.
Pre-Paid Solutions, 343 Ark. at 319, 34 S.W.3d at 361.
The machine owners argued in Pre-Paid Solutions that because patrons could play for free, no consideration is given, and a patron therefore does not risk anything of value by playing the game. The court rejected the argument, reasoning that the right to play the game constitutes "property" that may be won or lost in violation of the prohibition of gaming devices. The court continued:
 Thus, it is of no consequence that Appellants offer patrons the opportunity to initiate the game without making a purchase. Moreover, once the free-play certificate is redeemed for a $1 bill, the player undoubtedly possesses property that he or she may risk by inserting the money into the machine to play the game. Every time the player elects to risk the value of the points awarded on the machine for another spin of the reels, he or she is risking that property for the chance to win additional money.
Pre-Paid Solutions, 343 Ark. at 323, 34 S.W.3d at 363.
It thus appears from the case law and the language of the applicable statutes that the factors that will be most pertinent in determining whether the eight-liner machines that you have described are permissible will be those surrounding the nature of the risk of loss associated with playing the machines (i.e., the consideration for playing), the role of chance in winning and losing, and the cash value of the prizes that are received for winning.
It is conceivable that even if, given all the facts, the eight-liner machines are determined to be permissible "amusement devices," they may nevertheless be impermissible as "lotteries," which are prohibited by Article 19, § 14 of the Arkansas Constitution.
Under the Arkansas Supreme Court's long-standing interpretation of this constitutional prohibition against lotteries, a game or scheme constitutes a "lottery" if the following three elements are present:
• Consideration is paid to play or participate;
• Playing or participating creates the chance to win a prize; and
 • The game is controlled entirely by chance, and winning is not influenced by the player's skill or judgment.
See Scott v. Dunaway, 228 Ark. 943, 311 S.W.2d 305 (1958); Shuffield v.Raney, 226 Ark. 3, 287 S.W.2d 588 (1956); Burks v. Harris, 91 Ark. 205,120 S.W. 979 (1909).
Accordingly, all of the factors mentioned above — risk, consideration, chance, skill, pay-off — will be pertinent in determining the legality of the eight-liner machines that you have described, both under the anti-gambling statutes and under the Arkansas Constitution.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General