McKENZIE vs. MURPHY.

An alien domiciled in this state, being a householder or head of a family, is entitled to the exemption of his homestead from sale on execution.

Unless the terms of a statute are entirely free from ambiguity, regard must be had to its known object, to the mischief intended to be provided against, to its general spirit and intent. (*Patterson vs. Thompson*, 23 *Ark.*)

The word citizen is often used as meaning only an inhabitant, a resident of a town, state or county, without any implication of political or civil privileges: and such is the meaning of the word in the homestead law.

*Error to Phillips Circuit Court.*

Hon. M. W. ALEXANDER, Circuit Judge.

GARLAND & RANDOLPH for the plaintiff

No person but a free white citizen of this state can claim the benefit of the homestead exemption. *Sec.* 29, *ch.* 68, *Gould's Digest.*

We maintain that no one is a citizen unless he is a citizen of the United States. This conclusion is warranted by the provisions of chapter 9, Gould's Digest, which extended to aliens, or persons not citizens of the United States, rights and privileges, which they were already entitled to if citizens of the state. See *secs.* 1, 5, *bill of rights; State vs. Penney,* 5 *Eng.* 621; *secs.* 2, 4, 6, *art.* 3, *State Cons.* The definition of the term citizen, would appear to clear up all doubt on the question. It is " one who is in the enjoyment of all the rights to which the people are entitled, and bound to fulfill the duties to which they are subject." *Amy vs. Smith,* 1 *Litt. R.,* 334; *Bouvier's Inst., vol.* 1, *p.* 64. To obtain the benefit of the act the party must show that he is within all its provisions: that he is *free, white, a citizen of the state, a householder or the head of a family,* and *a resident* on the homestead claimed.

The court should have excluded the certificate of the clerk that

Murphy was naturalized. It was not competent evidence of the fact. *Miller vs. Reinhart,* 18 *Geo. R.,* 239; 1 *Williams (Verm.)* 621; 2 *Jones (N. C.) Law R.,* 368.

POPE & NEWTON, *contra.*

The certificate of the clerk of Phillips circuit court, though somewhat informal, was sufficient evidence that Murphy had been fully and properly admitted to citizenship by a court of competent jurisdiction; and was conclusive as to all the facts recited therein or necessarily implied. *Spratt vs. Spratt,* 4 *Pet. Rep.,* 407; *Campbell vs. Gordon and wife,* 2 *Cond. Rep.,* 343; *Towle's case,* 5 *Leigh,* 743; *State vs. Penny,* 10 *Ark.,* 621.

By "citizen" we generally understand a person not only domiciled within a state, but entitled to all the privileges and franchises thereof. But this is not the only sense, even in strict law, in which it is used. In ordinary use, it is frequently taken to mean the residents of a place, and so in law the word means nothing more than domicil: 2 *Cranch.,* 64; 7 *Cranch.,* 308; 8 *Cranch.,* 335; 2 *Gal. C. C. R.,* 268; 6 *Hall's Amer. Law Jour.*

Citizenship of the United States is not necessary to constitute one a citizen of a state. Residence determines state citizenship as distinguished from that of the United States. See *Clark vs. Clark,* 5 *Mason, C. C. R.,* 70; *Cooper's Lessee vs. Galbrath,* 3 *Wash. C. C. R.,* 546. The same distinction is taken in the constitution and laws of this state. *Art.* 4, *sec.* 2, *Cons.; ib. secs.* 20, 21, 22; *art.* 2, *sec.* 4. *Gould's Dig., ch.* 9: It is submitted, that it is not necessary, to entitle the defendant to avail himself of the homestead exemption, to show that he was, or is a citizen of the United States. Nothing was necessary but to show that he was a free white citizen of the state. Residence, with the intention to make this his permanent home, constituted him a citizen within the meaning of the act.

Mr. Justice FAIRCHILD delivered the opinion of the court.

This case was tried in the circut court of Phillips county at its

May term, 1860, and was an action of ejectment by the plaintiff in error, against the defendant in error, for a town lot in Helena, long occupied by the defendant, a householder and head of a family, and a free white person; but the question between the parties was, in the court below, and is, in this court, whether the defendant is entitled to the benefit of the homestead exemption act, that would reserve the town lot, the property in suit, from execution, if the defendant, in addition to the characteristics noted, was a citizen of this state. To show this, the defendant was permitted to read in evidence a certificate of naturalization which was not a copy of the judgment of a court, but a statement by the clerk, that, by act of the court, the defendant was admitted to be a citizen of the United States. This alleged error of the circuit court does not affect the validity of its judgment, if another position taken by the defendant and declared by the court to be law and applicable to the case, be correct: which is, that the law in question used the phrase, citizen of the state, not in the political sense of citizenship by the laws of the United States, but simply to signify a resident, an inhabitant of the state. For, if this be the right construction of the statute, the defendant was entitled to judgment without any such testimony as his certificate of naturalization would have afforded, if a legal instrument of evidence, and the admission in evidence of the certificate, though not legal to prove the order of naturalization, would not affect a judgment good without any such record.

We are of the opinion that the circuit court well applied the law on the proposition it announced as the law applicable to the case on trial.

The statute, so far as material to the case under consideration, is as follows:

"Every free white citizen of this state, male or female, being a householder, or the head of a family, shall be entitled to a homestead, exempt from sale or execution . . . . not exceeding one hundred and sixty acres of land, or one town or city lot being the residence of such householder or head of a family, with the appurtenances and improvements thereunto belonging.

"The preceding section shall be deemed and construed to exempt such homestead, in the manner aforesaid, during the time it shall be occupied by the widow, or child, or children of any deceased person, who was when living, entitled to the benefits of this act." *Secs.* 29, 30, *ch.* 68, *Gould's Digest.*

The object of the statute, as is plainly to be seen from reading the foregoing sections, was to afford a home to the family of which the citizen, the householder, was the head, irrespective of his liabilities. The statute intended no individual benefit for the head of the family ; disconnected from the family, the head of it was entitled to no consideration ; but the family, when deprived of its head by death, was to have the protection of the act by holding the land, or town or city lot, upon which the family residence was situated, exempt from execution, so long as either was occupied and used as the residence of the family of which the deceased head was the representative.

Such being the object of the statute, we cannot suppose that the general assembly intended to confer a benefit upon the family of a citizen, native born, or naturalized, which it would deny to that of a domiciliated foreigner, as the one was as likely as the other to need the exemption, and both were in reason and in nature equally entitled to its protection.

An allusion to the facts of this case may afford an illustration of the reasonableness of this conclusion. Murphy, the defendant, was shown, at the trial, to have lived in this state since 1842, except an interval of a few months in New Orleans, in 1850 and 1851, he served as a soldier of the United States for twelve months in its war with Mexico, married in this country, had been the head of a family for ten years, and had a wife and three children at the time of the trial. And by the efforts of both plaintiff and defendant to introduce testimony upon the subject, he endeavored to become naturalized. We cannot preceive any reason why, upon this state of facts, the family of the defendant, or Murphy for it, as its head, is not as fully entitled to the exemption of the statute, as if he had by legal evidence proven a suc-

cessful application for participation in the political rights of citizenship of the United States. Yet, if the words of the statute will not support such a construction, it must not be given. *Branton vs. Branton*, 23 *Ark.*, 578; but as was said, in construing another statute in an important matter, "unless its terms are entirely free from ambiguity, regard must be had to its known object, to the mischief intended to be provided against, to its general spirit and intent." *Patterson vs. Thompson*, ante 55.

The word "citizen" is often used in common conversation and writing, as meaning only an inhabitant, a resident of a town, state, or county, without any implication of political or civil privileges; and we think it is so used in our constitution. In *art. IV. sec. 2*, of the constitution of 1836, it is written, "every free white male citizen of the United States, who shall have attained the age of twenty-one years, and who shall have been a citizen of this state six months, shall be deemed a qualified elector." Besides being a citizen of the United States, a voter or elector in this state must have been a citizen of the state for six months, which can mean nothing else than to have been a resident of the state for that time, an inhabitant, as is the term used in sec. 4, of the same article, in prescribing that, as a qualification of a representative, in addition to being a free white male citizen of the United States. Section 4, of the declaration of rights, article II, constitution of 1836, is thus: "That the civil rights, privileges, or capacities of any citizen shall, in no wise, be diminished or enlarged on account of his religion." An alien has civil rights, though he may not have the civil capacities of conferring or holding offices, and can those rights "be diminished or enlarged on account of his religion?" Or, if an attempt is made to do this by statute, or without law, would it not be void by this section? If so, it must be because citizen is used in the sense of resident, or inhabitant, else a wider rule of construction must be adopted so as to hold that an alien is, by implication, free from gain or loss of civil rights on account of religion, because other persons are expressly saved therefrom, which, if good

HARVARD LAW SCHOOL LIBRARY

law, would bad logic. So, in sec. 7, of the same article, " every citizen may freely speak, write and print on any subject—being responsible for the abuse of that liberty." A law prohibiting this to an unnaturalized foreigner, would be in danger of falling, when met by this inviolate privilege to every citizen.

In the United States courts, their jurisdiction dependent upon controversies between citizens of different states, is believed to have been often upheld by the mere fact of residence, without the existence of political cifizenship, as being in accordance with the coustitutional provision on that subject, though the authorities are not now accessible.

Upon reason, and upon authority, we think the judgment of the circuit court is right, and it is affirmed.