W. Jackson Williams, Esquire Williams Anderson, PLC 111 Center Street, 22nd Floor Little Rock, Arkansas 72201
Dear Mr. Williams:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. Your popular name and ballot title are as follows:
 Popular Name
 A Constitutional Amendment Authorizing the Operation and Regulation of Lotteries by or on Behalf of the State to Fund Scholarships and Grants for Arkansas Citizens Enrolled in Accredited Two-Year and Four-Year Colleges and Universities in Arkansas
Ballot Title
AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING THE GENERAL ASSEMBLY TO PROVIDE FOR THE OPERATION AND REGULATION OF LOTTERIES BY OR ON BEHALF OF THE STATE; REQUIRING LOTTERY PROCEEDS TO BE USED SOLELY TO PAY THE OPERATING EXPENSES OF THE LOTTERIES, INCLUDING ALL PRIZES, AND TO FUND OR PROVIDE FOR SCHOLARSHIPS AND GRANTS TO CITIZENS OF THIS STATE ENROLLED IN ACCREDITED TWO-YEAR AND FOUR-YEAR COLLEGES AND UNIVERSITIES LOCATED WITHIN THIS STATE; REQUIRING THE GENERAL ASSEMBLY, FROM TIME TO TIME, TO ESTABLISH CRITERIA FOR THE SCHOLARSHIPS AND GRANTS AND TO DESIGNATE THE STATE AGENCIES THAT SHALL ACCREDIT THE TWO-YEAR AND FOUR-YEAR COLLEGES AND UNIVERSITIES; PROVIDING THAT LOTTERY PROCEEDS SHALL NOT BE SUBJECT TO APPROPRIATION BY THE GENERAL ASSEMBLY; DECLARING LOTTERY PROCEEDS TO BE CASH FUNDS HELD IN TRUST SEPARATE AND APART FROM THE STATE TREASURY; AND PROVIDING THAT LOTTERY PROCEEDS REMAINING AFTER PAYMENT OF OPERATING EXPENSES AND PRIZES SHALL SUPPLEMENT, NOT SUPPLANT, NON-LOTTERY EDUCATIONAL RESOURCES
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects my view of the merits of the proposal. This Office has been given no authority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law." Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d, 669
(2000); Donovan v. Priest, 326 Ark. 353, 931 S.W.2d 119 (1996); and Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed constitutional amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, I have concluded that there are several unclear points that must be addressed before a legally sufficient ballot title and popular name can be approved for this measure. A number of additions or changes to your ballot title, and possibly your popular name, may be necessary, in my view, in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the clarification of the matters discussed below.
An initial question arises regarding the effect of your proposed amendment on Amendment 84 to the Arkansas Constitution, which was adopted by the voters at the 2005 general election. Amendment 84 allows "the game of bingo or raffles" to be conducted by "authorized bingo and raffles organizations" if net receipts are used only for "charitable, religious, or philanthropic purposes." Ark. Const. amend. 84, § (b)(1).[1] It provides that a game of bingo or raffles meeting this criteria "shall not be a lottery prohibited by Section 14 of Article 19 of the Arkansas Constitution . . ." Id. (emphasis added). Article 19, Section 14 currently proscribes lotteries as follows: "No lottery shall be authorized by this State, nor shall the sale of lottery tickets be allowed." Ark. Const. art. 19, § 14.
Your proposed constitutional amendment provides in relevant part:
 Section 1. Section 14 of Article 19 or the Constitution of the State of Arkansas is amended to read as follows:
 § 14. Lotteries prohibited.
 No lottery shall be authorized by this State, nor shall the sale of lottery tickets be allowed.
 (a) Except as specifically provided in this Section 14 of the Arkansas Constitution, all lotteries and the sale of lottery tickets are hereby prohibited.
Emphasis added.
Your amendment makes no reference to Amendment 84; nor does it define "lotteries." This office has consistently adhered to the view that the game of bingo is controlled entirely by chance and can constitute a "lottery" under art. 19, § 14, as defined by the Arkansas Supreme Court, if the other necessary elements are present. See, e.g., Ark. Ops. Att'y Gen. 2004-155; 99-318; 93-437; 93-364. Under the Arkansas Supreme Court's long-standing interpretation, a game or scheme constitutes a "lottery" if the following three elements are present: (1) consideration is paid to play or participate; (2) playing or participating creates the chance to win a prize; and (3) the game is controlled entirely by chance, and winning is not influenced by the player's skill or judgment. Scott v. Dunaway, 228 Ark. 943, 311 S.W.2d 305 (1958); Shuffield v. Raney,226 Ark. 3, 287 S.W.2d 588 (1956); Burks v. Harris, 91 Ark. 205,120 S.W. 979 (1909). To date, however, the Arkansas Supreme Court has not squarely addressed the question of whether bingo or raffles constitute a "lottery." It has only observed that the words "`lottery,' `bingo,' and `raffles . . . connote games of chance or gambling . . ." Crochet v. Priest, 326 Ark. 338, 346, 931 S.W.2d 128 (1996).
In light of the foregoing, I believe there may be some question in the minds of the voters whether games of bingo and raffles authorized pursuant to Amendment 84 and its enabling legislation will continue to be outside art. 19, § 14's lottery proscription if your proposed measure is adopted. Your measure prohibits "lotteries" except as provided in art. 19, § 14. It does not take into account the fact that certain other activities that may fall within the judicial definition of "lotteries" are authorized elsewhere in the Arkansas Constitution. I note in this regard that the proposed amendment contains no general repealer, but the intent is nevertheless somewhat unclear. Because the voters are entitled to a clear understanding of the effect of your measure on games of bingo and raffles authorized under Amendment 84, clarification is necessary so as to avoid a misleading or insufficient ballot title on this point.
A related question involves the General Assembly's authority to provide for games of bingo and raffles that might, according to Amendment 84, currently be prohibited by Ark. Const, art. 19, § 14. Your proposal in relevant part would amend art. 19, § 14 to add a subsection stating:
 (b) The General Assembly may by law provide for the operation and regulation of lotteries by or on behalf of the State[.]
If Amendment 84's authorization of certain games of bingo and raffles is unaffected by your amendment, there may be a remaining question whether your proposed amendment would permit the General Assembly to provide for the operation and regulation of games of bingo and raffles that are not authorized under Amendment 84. This raises the issue of the scope of the term "lotteries" under your amendment.
Although there is a long-standing judicial interpretation of the term "lottery" under art. 19, § 14, voter awareness of the judicial definition is an uncertain matter. I believe it is unclear, moreover, whether it is your intention for the meaning of the term "lotteries" to accord with the expansive meaning promulgated by the Arkansas courts. As my Texas colleague pointed out when called upon to determine what the voters intended in adopting a 1991 amendment to the Texas Constitution that permits the legislature to "authorize the State to operate lotteries . . . [,]" Tex. Const. art. III, § 47(e)), there may be a distinction between the "modern common meaning of the term `lottery'" and the "technical meaning as construed by courts of old . . ." Tex. Op. Att'y Gen. GA-0103 (2003) 5-6. Like the Arkansas courts, the Texas courts had historically construed the term "lottery" broadly to include an extensive variety of games of chance. Id. at 3. The specific issue before the Texas Attorney General was whether the voters intended to authorize the State to operate video lottery terminals. After noting the judicial interpretation, which would have encompassed "any kind of game of chance, including slot machines and a variety of casino games[,] id. at 6, my colleague quoted several dictionary definitions reflecting the common or "popular" meaning of the term "lottery," id., including the following from Webster's Third New International Dictionary (1969):
 [a] scheme for the distribution of prizes by lot or chance; esp., a scheme by which prizes are distributed to the winners among those persons who have paid for a chance to win them, usually as determined by the numbers on tickets as drawn at random from a lottery wheel.
Id. at 1338.
Based upon the particular history of the relevant Texas constitutional provision, as well as the ballot proposition, which referred to a "state lottery," the Attorney General concluded that voters in 1991 approved a "narrow and particular form of state-operated game" and did not intend to authorize the state to operate video lottery terminals. Op. at 5-6. He also quoted the following from a previous Texas Attorney General opinion:
[I]t is self-evident that voters presumed from the ballot language that they were voting for or against the common perception of a `state lottery,' as denoted by the clear language of the ballot proposition, rather than a broad spectrum of games which embody the `lottery principle,' as articulated by . . . judicial decisions.
Id. at 7, quoting Tex. Op. Att'y Gen. DM-302 (1994) at 7 (emphasis original).
As reflected by this opinion, the meaning of the term "lotteries" under your proposed amendment is of critical importance. Voters who are deciding whether to adopt your measure may wish to know whether they are authorizing the General Assembly to approve all species of gaming that constitute a "lottery" as broadly construed by the Arkansas Supreme court, i.e., a "scheme for the distribution of prizes by chance among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize." Banks v. Harris, 91 Ark. 205, 120 S.W. 979
(1909). I note that the text of your proposal provides that "[l]ottery proceeds shall be used solely to pay the operating expenses of the lotteries, including all prizes . . ." The word "prizes" could possibly suggest an intent for the term "lotteries" to be construed according to its more common or popular meaning as discussed above, but this is by no means clear. Moreover, this plainly is "an essential fact which would give the voter serious ground for reflection on whether to vote for the measure." Finn v. McCuen, supra. I am reinforced in this belief by the language permitting the General Assembly to authorize the operation of lotteries "by or on behalf of the State." (Emphasis added). This would seemingly authorize the delegation of all or part of the operations to be delegated to private parties, a point that in my view should be also made clear in the ballot title for the measure.
In my opinion, the ballot title must convey a clear understanding of the substance of your proposal with respect to the authorization of "lotteries." These ambiguities prevent me, however, from summarizing the measure in a substituted ballot title.
Another area of concern involves the provision for scholarships and grants to "citizens of this State enrolled in accredited two-year and four-year colleges and universities located within this State." First, with regard to the term "citizens," I must note that based on my research, this term can vary according to context. See, e.g., Arkansas Highway Transportation Department v. Hope Brick Works, 294 Ark. 490,495-96, 744 S.W.2d 711 (1988); Ghegan v. Weiss, 338 Ark. 9, 991 S.W.2d 536
(1999), citing McCarroll v. Gregory-Robinson-Speas, Inc., 198 Ark. 235,129 S.W.2d 254 (1939). With regard, for instance, to the term "citizen" as applied to municipalities, at least one court has stated that the term "is technically a misnomer . . . [because] [c]itizenship applies ordinarily to one's relationship to a national government and a state of domicile within such government." Halaby v. Board of Directors,162 Ohio St. 290, 293, 123 N.E.2d 3 (1954). The Ohio court noted that state citizenship is defined by the Fourteenth Amendment to the United States Constitution as follows: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." Id. But the court further observed:
 It is apparent, however, from a study of legislation and court decisions, that, except where a citizen of the United States is referred to, a variety of meanings is loosely given to the term, `citizen,' and that such use creates legal ambiguity. It is to be observed that the term, `citizen,' is often used in legislation where `domicile' is meant and where United States citizenship has no reasonable relationship to the subject matter and purpose of the legislation in question.
Id. at 293 (emphasis added).
The court continued with the following discussion of an Arkansas case:
In the case of McKenzie v. Murphy, 24 Ark. 155, the court held that an alien domiciled in that state and being a householder or head of the family is entitled to the exemption of his homestead from sale on execution, a privilege granted by statute to citizens of the state; that, unless the terms of the statute are entirely free from ambiguity, regard must be had to its known object, to the mischief intended to be provided against and to its general spirit and intent; and that the word, citizen, is often used as meaning only an inhabitant or a resident of a town, state or county, without any implication of political or civil privileges.
Id. at 294.
In light of the foregoing, I have considered the context of your proposed measure — higher education scholarships and grants — and I remain uncertain whether the phrase "citizens of this State" is intended to refer to national citizenship. I note that the Arkansas Supreme Court has commented generally on the distinction between "resident" and "citizen," and has stated in dicta that these terms are "most often synonymous." Arkansas Gazette Co. v. Pickens, 258 Ark. 69, 77, 522 S.W.2d (1975). But in the specific context of higher education benefits, there is precedent for basing eligibility criteria on U.S. citizenship or permanent resident status. See, e.g., A.C.A. § 6-82-1005(b)(3) (Supp. 2005) (eligibility under the Arkansas Academic Challenge Scholarship Program includes requiring the applicant to be "a citizen of the United States or . . . a permanent resident alien[.]") I am unable to determine your intent in light of existing statutes such as this, coupled with the above general observations concerning the term "citizen." This ambiguity must be resolved for proper reflection of this provision in the ballot title.
Another unclear point involving the language with respect to scholarships and grants relates to the phrase "located within this State." As noted above, your amendment would extend these benefits to citizens of the State who are enrolled in "accredited two-year and four-year colleges and universities located within this State." This language presumably would encompass both public and private Arkansas institutions, similar for instance to the Arkansas Governor's Scholars Program, A.C.A. § 6-82-301
— 314 (Repl. 2003 and Supp. 2007). I believe there is some question, however, whether the phrase "located within this State" is also intended to include institutions that, while based out of state, are "located" in Arkansas in the sense that they have a campus or a branch here. If so, I note that this might include for-profit entities, and according to my research, state law currently makes no provision for scholarships or grants to such entities. Such a change in law might give voters cause to pause and reflect. Because I am uncertain regarding the precise meaning of the phrase "located within this State," I cannot summarize it for inclusion in a ballot title without clarification.
The reference to accreditation of two-year and four-year colleges and universities is also ambiguous, in my view. Following the reference to "accredited" institutions, the text of your proposed amendment states:
 The General Assembly, from time to time, shall establish criteria for the scholarships and grants and shall designate the State agencies that shall accredit the two-year and four-year colleges and universities.
Emphasis added.
I am somewhat uncertain as to the meaning or scope of the term "accredit" as used herein. Federal law provides for the recognition of State, regional, or national accrediting agencies and associations for federal purposes, based on criteria established by the Secretary of the United States Department of Education. See 20 U.S.C.A. § 1099b (2000). I am unaware, however, of any state agency or agencies in Arkansas that currently perform such accreditation services. Compare A.C.A. § 6-51-907
(requiring that associate degree programs offered by a "Center for Collegiate Instruction" "shall meet all the standards for accreditation by the Commission on Institutions of Higher Education of the North Central Association of Colleges and Schools.") It may be that this provision in your measure is intended to establish a different accreditation system or scheme of some sort solely for purposes of distributing the scholarships or grants that are funded by lottery proceeds. However, this is not entirely clear from the text. The criteria or basis for the General Assembly's designation of accrediting agencies is also uncertain. Because only citizens enrolled in such "accredited two-year and four-year colleges and universities" are eligible for the scholarships and grants to be funded by lottery proceeds, this is an important point for the voter and I cannot summarize it in a ballot title without clarification of these ambiguities.
Finally, regarding the designation of lottery proceeds as "cash funds" under the proposed amendment, I note that the measure is silent with respect to the management of such funds. It simply states:
 Lottery proceeds shall not be subject to appropriation by the General Assembly and are specifically declared to be cash funds held in trust separate and apart from the State treasury.
By declaring that the lottery proceeds are to be held in trust outside the treasury, it seems clear that your amendment effectively exempts these revenues from the provisions of Title 19, Chapter 4, Subchapter 8, governing the budgeting and expenditure of "cash funds." See A.C.A. § 19-4-803(a) (stating that "any . . . funds determined by the Chief Fiscal Officer of the State or the General Assembly, to be held in trust, and on deposit in a financial institution other than the State Treasury shall be exempt form the provisions of this subchapter.") Additionally, because the amendment does not mention who will hold and disburse the lottery proceeds, I assume that this will be a matter for the General Assembly to address as part of its power to "provide for the operation and regulation of lotteries . . ." In my opinion, this will be of substantial concern to the voting public, and consequently it should be made clear to the voter in the ballot title for the measure.
In conclusion, I must emphasize that my office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, supra. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
The problems recited above prevent me from certifying your submission at this time. My statutory duty under these circumstances is to reject your proposed popular name and ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title and popular name may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The amendment refers the matter of licensing and regulation to the General Assembly, and the General Assembly recently enacted such legislation under Act 388 of 2007, codified at Arkansas Code Title 23, chapter 114. This act is entitled the "Charitable Bingo and Raffles Enabling Act." See A.C.A. § 23-114-101 (Supp. 2007).